IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| CATHERINE D. MARTIN, | ) | CIVIL ACTION NO. 9:14-119-RBH-BM |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the final decision of the Commissioner wherein she was denied disability benefits.

This case was referred to the undersigned for a report and recommendation pursuant to Local Rule

73.02(B)(2)(a)(D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) on September 30, 2010

(protective filing date), alleging disability as of December 11, 2009, due to degenerative disc disease

with radiculopathy, herniated discs, carpal tunnel syndrome (CTS), hypertension, depression, and

anxiety. (R.pp. 139, 187). Plaintiff's claim was denied both initially and upon reconsideration.

Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on July

18, 2012. (R.pp. 35-64). The ALJ thereafter denied Plaintiff's claims in a decision issued August 12,

2012 (R.pp. 22-31). The Appeals Council denied Plaintiff's request for a review of the decision,

thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-3).



Plaintiff then filed this action in this United States District Court, asserting that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration, or for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)).

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).



**<u>Discussion</u>**

A review of the record shows that Plaintiff, who was fifty-two (52) years old when she alleges she became totally disabled, has a high school education with past relevant work as a secretary and proof operator. (R.pp. 29-30, 55, 139, 165). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience, and functional capacity, and which has lasted or could reasonably be expected to last for a continuous period of not less than twelve (12) months.

After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[1] of CTS and degenerative disc disease with history of lumbar laminectomy, diskectomy, and fusion surgeries, she nevertheless retained the residual functional capacity (RFC) to perform sedentary[2] work restricted to only pushing up to nine pounds bilaterally; no pulling; only occasional climbing of stairs/ramps; no climbing of ladders, ropes, or scaffolds; occasional stooping, kneeling, crawling, and crouching; frequent overhead reaching with her bilateral upper extremities; frequent feeling with her left upper extremity; frequent gross manipulation with her right upper extremity; and the use of an assistive device while standing and supporting herself. (R.pp. 24, 26). The ALJ further concluded Plaintiff was able to perform her

---

[1]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. <u>See</u> 20 C.F.R. § 404.1521(a); <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-142 (1987).

[2]Sedentary work is defined as lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).



past relevant work as a secretary and proof operator with these limitations, and thus was not disabled during the period at issue. (R.pp. 29, 31). The ALJ also found that Plaintiff could perform other jobs existing in significant numbers in the national economy with her limitations as well, again resulting in her not being entitled to disability benefits. (R.p. 30).

Plaintiff asserts that in reaching her decision, the ALJ erred because the ALJ's findings as to Plaintiff's mental limitations as well as the ALJ's RFC analysis (including her credibility analysis) are not supported by substantial evidence. However, after a careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision should therefore be affirmed. Laws, 368 F.2d at 642 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

### Medical Records

The medical record reflects that Plaintiff was seen by Dr. Leah Trantham of Goose Creek Family Medicine in January 2009, for complaints of lower back pain. (R.p. 260). On March 27, 2009, Plaintiff told to Dr. Tranham that she experienced pain in her low back after walking for "several hours", and a lumbar spine x-ray taken that same day revealed only mild degenerative disc disease and facet arthropathy, mild degenerative changes of Plaintiff's sacroiliac joints, and diffuse osteopenia. (R.pp. 258, 265). Dr. Trantham saw Plaintiff again in December 2009, and on December 16, 2009, another lumbar spine x-ray again showed only mild spondylosis with hypertrophy more prominent caudally, but with no marked changes since Plaintiff's prior x-ray. (R.pp. 252-253, 264).



There is nothing in these records to indicate that Plaintiff had any disabling impairment at that time, and indeed Plaintiff does not claim any disability for this period.

Plaintiff underwent physical therapy in December 2009, and again in January 2010 (which was now after Plaintiff contends her condition had become disabling) at Sports Plus. Plaintiff reported that she had experienced back pain for "years" and complained of difficulty sitting and standing. She further reported that Lortab was initially helpful, she had a TENS unit, and she also took Percocet for pain. The physical therapist noted that Plaintiff walked with an antalgic gait, had reduced range of motion, had reduced strength, and had positive straight leg raises. After seven visits, the physical therapist noted that therapy was helping Plaintiff manage her pain, but that Plaintiff had not shown objective resolution of her acute back episode. (R.pp. 266-274).

Plaintiff began treatment at Pain Specialists of Charleston (Pain Specialists) in January 2010, at which time she complained to Physician Assistant (PA) Crystal Gutierrez about low back pain on both sides that did not radiate into her legs. On physical examination Plaintiff complained of pain with extension, flexion, and rotation; she had paraspinous tenderness on palpation at L5-S1; and a broad-based gait. PA Gutierrez assessed facet syndrome, prescribed Amrix and Ryzolt, and recommended that Plaintiff finish physical therapy and return for a diagnostic lumbar medial branch block (LMBB). (R.pp. 316-317). Plaintiff underwent a diagnostic LMBB, an actual LMBB, and several epidural steroid injections in February and March 2010 with Dr. Edward M. Tavel of Pain Specialists. (R.pp. 321-325). On February 19, 2010, an MRI of Plaintiff's lumbar spine showed disc bulge and facet hypertrophy from L1-2 to L5-S1 with neural contact and possible effect at multiple levels. (R.p. 289). On March 16, 2010, Plaintiff reported minimal relief from the injections, and reported continued radicular pain in her legs associated with tingling and numbness. Dr. Tavel noted



that Plaintiff failed conservative treatments, and she was referred to an orthopedic surgeon based on her wish to move forward with surgery. (R.p. 325).

Plaintiff was examined by Dr. William Wilson of South Carolina Sports Medicine and Orthopaedic Care on March 17, 2010. He noted that a Plaintiff's MRI showed disc herniations at L4-5 and L5-S1. Examination indicated tenderness to palpation in her lumbosacral area, positive straight leg testing on the right, and 4/5 strength in her right ankle and EHL. Dr. Wilson assessed radiculopathy in Plaintiff's right leg, consistent with L5-S1 radiculopathy. (R.p. 354). He performed a right-sided hemilaminectomy diskectomy at L4-L5 and L5-S1 on March 25, 2010. (R.pp. 363-365).

At a follow-up visit on April 8, 2010, Dr. Wilson noted that Plaintiff was doing "fairly well" with some mild right leg symptoms in the anterior aspect of her thigh, an antalgic gait, well-healed surgical incisions, and good strength. He told Plaintiff that she could participate in light walking. (R.pp. 352-353). However, on May 7, 2010, Plaintiff complained to Dr. Wilson of pain in several areas including her elbow, right thigh, and across her back and into her buttocks. Upon examination Plaintiff was found to be mildly tender to palpation of her right elbow, and she had mildly reproduced pain with resisted extension of her right wrist and long finger. Otherwise, she was non-tender medially and over the olecranon, she had no erythema or swelling, and she had no neurologic deficits distally in her lower extremities. Dr. Wilson prescribed a short course of Toradol and referred Plaintiff for physical therapy. (R.p. 352).

On June 4, 2010, Plaintiff complained to her physical therapist that she did not feel she was getting any better. (R.p. 282). That same day, Plaintiff complained to Dr. Wilson of intermittent lower back pain, pain in her elbow, and intermittent paresthesias of her right hand. Based on Plaintiff's report to him that physical therapy was helping, Dr. Wilson directed her to continue it

6



and to ask the therapist to work on her elbow as well. He gave her a brace and splint and prescribed Celebrex. (R.p. 351). However, on June 16, 2010, Plaintiff told Dr. Wilson that she could not sit or walk due to pain in her pelvis and numbness in both legs and pain and numbness in her arms, although on examination there was no Hoffman sign[3] and Plaintiff had good strength in both her upper and lower extremities. Dr. Wilson referred Plaintiff for MRIs of her lumbar and cervical spines, and prescribed Percocet. (R.p. 350). On June 22, 2010, Plaintiff elected to stop undergoing physical therapy. (R.p. 286).

A lumbar MRI performed on July 27, 2010 revealed recurrent disc extrusions at L4-L5 and L5-S1 with neural contact and possible effect, and a cervical spine MRI showed spondylosis most evident at C5-6 and C6-7 (but with no severe stenosis). (R.pp. 288, 333-334). Dr. Wilson discussed the possibility of further surgery with the Plaintiff in August 2010, and referred her to a hand surgeon regarding her CTS. (R.p. 347). Plaintiff thereafter underwent right carpal tunnel release surgery on September 22, 2010. (R.pp. 291). On October 4, 2010, Plaintiff reported some lingering arm and hand symptoms and was encouraged to continue scar desensitization and massage. Plaintiff also complained that she was experiencing some fairly significant back pain. (R.pp. 344-345).

Dr. Wilson noted in November 2010 that it was not clear whether Plaintiff had recurrent disc herniation or fibrosis, and he sent Plaintiff for an MRI with contrast. A possible anterior lumbar interbody fusion (ALIF) was also discussed. (R.pp. 326-332, 343-344). Plaintiff underwent ALIF surgery on December 23, 2010; (R.pp. 366-369); and on January 5, 2011, Dr. Wilson noted that Plaintiff was ambulatory and had good strength in her lower extremities, while x-

---

[3]The Hoffmann sign is commonly used in clinical practice to assess cervical spine disease. http://www.ncbi.nlm.nih.gov/pubmed/18928217.



rays of her lumbar spine showed good position of her interbody fusion cages at L4-L5, L5-S1 and her pedicle screws posteriorly. (R.p. 551).

On January 20, 2011, Dr. Trantham with Goose Creek Family Medicine completed a medical source statement in which she indicated that Plaintiff had been diagnosed with depression and anxiety disorder. She noted that Plaintiff was oriented times four, had intact thought process and thought content, had a worried/anxious mood, and had adequate attention/concentration and memory. Dr. Trantham wrote that Plaintiff's symptoms interfered with her decision-making ability, but that Plaintiff was currently coping and was able to make good/appropriate decisions. She opined that Plaintiff had only a slight work-related limitation in function due to her mental condition. (R.p. 392). Thereafter, on January 28, 2011, state agency psychologist Dr. Kimberlie Brown opined that Plaintiff's depression and anxiety disorder were not severe impairments. Dr. Brown further found that Plaintiff had no restrictions in her activities of daily living; only mild difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace; with no episodes of decompensation. (R.pp. 395-408).

On February 16, 2011, Plaintiff reported doing fairly well with only intermittent lower back pain that was improving. Dr. Wilson of Pain Management noted that Plaintiff was walking independently, had good strength in both lower extremities, had no significant soft tissue swelling, had intact sensory examination, and was neurovascularly intact. Dr. Wilson directed Plaintiff to gradually increase her activities and continue to see Dr. Tavel for pain management. (R.p. 550). On March 9, 2011, Plaintiff reported to PA Gutierrez that her pain relief was 60 to 70 percent, and her only reported medication side effect was constipation. (R.pp. 441-442). On April 6, 2011, Plaintiff



reported to PA Gutierrez that she had 50 to 60 percent relief from her pain medications and denied fatigue. (R.pp. 443-444).

On April 13, 2011, Dr. Wilson noted that Plaintiff was doing fairly well. She reported experiencing some right buttock hip pain and that she occasionally felt some paresthesias in her right leg, while a physical examination revealed no motor deficits in her lower extremity and she was noted to be ambulating well. Additionally, lumbar spine x-rays showed good hardware position. (R.p. 549). An x-ray on April 14, 2011 showed post-operative changes without complication, only mild degenerative disc disease at L1-2 through L3-4, and mild degenerative retrolisthesis of L3 on L4. (R.p. 409).

Dr. David Robinson performed a consultative comprehensive orthopedic examination of the Plaintiff on April 14, 2011. Plaintiff told Dr. Robinson that her overall symptoms were better since her surgery, but that she still had pain in her lower back and functional limitations. Dr. Robinson noted that Plaintiff ambulated somewhat slowly (without an assistive device) and had reasonably spontaneous neck movement with probable minor endpoint limitations in range of motion; that she exhibited limited forward flexion (to 70 degrees) of her lumbar thoracolumbar spine; and equivocal straight leg raise on right. However, on examination she was found to have intact gross strength and sensation; good range of motion in all of her upper extremity joints with intact strength, reflexes, and sensation; some decreased range of motion in her hip related to discomfort in her back but a reasonable range of motion and strength throughout her lower extremities; and generally intact strength, reflexes, and sensation in her lower extremities. Additionally, a neuropsychiatric examination revealed that Plaintiff was alert and appropriate, her basic cognition with regard to attention and memory seemed to be intact, and there were no obvious focal neurologic deficits.



Dr. Robinson thought it was likely that Plaintiff would continue to improve and increase her functional abilities, although it might be advisable for her to have some long-term limitations on her physical activities in terms of heavy lifting and physical exertion. He also noted that Plaintiff had some limitations in mobility and was limited in terms of prolonged sitting, standing, or walking, but opined that this should also improve over time. He noted that Plaintiff performed only very light lifting and carrying at that time, and that she may have some long-term restrictions in terms of heavier lifting or pulling activities, that she probably would not be a good candidate for repetitive overhead reaching or climbing, but should be able to perform gross manipulation and fine manipulation with both hands. Dr. Robinson opined that Plaintiff had the ability to understand, remember, and carry out instructions as well as the ability to respond to supervision, coworkers, and work pressures, even though he thought her motivation level was only fair. (R.pp. 412-416).

On April 26, 2011, state agency physician Dr. Isabella McCall opined that Plaintiff had the physical RFC to perform light work[4] with limitations of never climbing ladders/ropes/scaffolds; only occasionally climbing ramps, climbing stairs, stooping, kneeling, crouching, and crawling; frequently handling with her right upper extremity; and avoidance of even moderate exposure to hazards. (R.pp. 443-481).

From May to June 2011 Plaintiff returned to Pain Specialists of Charleston for medication follow up appointments. (R.pp. 443-449). On May 4, 2011, it was noted that Plaintiff received 60 to 70 percent pain relief with her medications, although she reported lethargy and

---

[4]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).



"hangover" from her prescribed Nucynta and that Opana and Nucynta caused constipation. (R.pp. 445-446). On June 1, 2011, Plaintiff reported her pain relief was down to 30 to 40 percent, although it was also noted that her compliance with her medical regimen at that time was poor. (R.p. 467).

On June 2, 2011, Dr. Trantham completed another questionnaire in which she opined that Plaintiff was oriented times four, had a slowed thought process, appropriate thought content, had a worried/anxious mood/affect, had adequate attention/concentration, had adequate memory, and had only a slight work-related limitation in function due to her mental condition. Dr. Trantham stated that Plaintiff's mental diagnoses included depression and generalized anxiety, for which she took Citalopram and Xanax, that these medications helped Plaintiff's condition, and that psychiatric care had not been recommended. (R.p. 429).

On June 30, 2011, state agency physician Dr. Tom Brown opined that Plaintiff could perform a range of light work. He opined that Plaintiff should only occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; could only occasionally stoop, kneel, crouch, and crawl; could reach frequently overhead with both upper extremities; could frequently perform gross manipulation with her right upper extremity; could frequently feel with her left upper extremity; and should avoid even moderate exposure to hazards. (R.pp. 464-470). That same day, Dr. Michael Neboschick, a psychologist, opined that Plaintiff's affective and anxiety-related disorders were not severe impairments, and found that Plaintiff had only a mild restriction in her activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence, or pace, with no episodes of decompensation. (R.pp. 450-463).

On July 8, 2011 Plaintiff received an injection in her right knee at Pain Specialists. (R.pp. 478-479). She reported 80 percent pain relief from the injection on July 27, 2011. (R.p. 480-



481). Plaintiff returned to Dr. Wilson in July 2011, where she complained of right-sided lower back pain; difficulty sleeping, driving, walking stairs, and standing to cook or do laundry; that her leg went "dead" if she sat for a period of time; and that there was "no way" she could go back to work. However, on physical examination Plaintiff's incisions were found to be healed and she had no neurological deficits, while her x-rays looked good with good fusion at L4-5 and L5-S1. Plaintiff was directed to continue seeing Dr. Tavel and to return in three months with an x-ray centered at L5. (R.p. 472).

When Plaintiff returned to see Dr. Wilson on October 11, 2011, she complained of diffuse sensitivity across her abdomen and abdominal incision, low back pain, a crunching sensation, nerve pain in her back, that her right leg went numb at time, and right knee pain. Plaintiff's x-rays looked good and her incisions were found to be well-healed. However, she was noted to be "hypersensitive" over her incisions, and complained that some strength testing of her lower extremities aggravated her lower back. She reported that she could not have any additional testing because of insurance reasons, but she was going to continue seeing Dr. Tavel and was continuing to work on long-term disability. Dr. Wilson stated that "[i]t is certainly not very likely, in my opinion, that she is going to be able to work, especially with the way her symptoms have persisted long term." (R.p. 482). On October 18, 2011, Plaintiff reported to PA Gutierrez that she had 50 to 60 percent pain relief with her medications, and 40 percent on November 8, 2011. (R.pp. 522-523).

Plaintiff underwent a physical work performance evaluation at Sports Plus Charleston on January 24, 2012. It was noted that Plaintiff used a cane for support in walking and standing, which made it difficult for her to safely lift, carry, or walk backwards while pulling, and that she "did not demonstrate sufficient weight handling abilities to support even sedentary level work." Plaintiff



retained the capacity to sit frequently and had no limitations on handling/fingering while seated, and it was not thought that she had any significant problems with hand/finger dexterity. Physical therapist Megan Graham indicated that Plaintiff had "self-limiting" behavior more than 50 percent of the time, that this self-limiting behavior influenced her test results, and that Plaintiff's maximum level of ability could not be determined due to her self-limiting behavior.  The report further noted that Plaintiff's self limiting behavior "significantly exceed[ed] normal limits" more than 33 percent of the time.  (R.pp. 485-491).

# I.

## (Evaluation of Mental Impairments)

Plaintiff's first claim of error is that the ALJ's findings as to her mental limitations are not supported by substantial evidence.  In particular, Plaintiff claims the ALJ erred in finding "'no limitations' in concentration, persistence, and pace when making her paragraph B findings at step two of the sequential evaluation process." Plaintiff's Brief, ECF No. 1 at 14.  The Commissioner contends that the ALJ appropriately accepted that Plaintiff had depression and anxiety, but found that these impairments were non-severe, properly followed the special technique set forth in the Commissioner's regulations, and properly continued with the sequential evaluation process.  The undersigned can discern no reversible error in the ALJ's step-two analysis.

A diagnosis of depression and anxiety does not require the ALJ to find that these are severe impairments.  See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) [The mere presence of impairments does not automatically entitle a claimant to disability benefits, there must be a showing of related functional loss].  Here, the ALJ acknowledged that Plaintiff had depression and anxiety, but found that these impairments were non-severe because they did not cause more than a



minimal limitation in her ability to perform basic mental work activities. (R.pp. 24). See Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990)[Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual function limitations]. In reaching this conclusion, the ALJ made findings with respect to each of the three broad categories of functioning - activities of daily living; social functioning; and concentration, persistence or pace, noting the history of Plaintiff's mental health complaints and making specific findings in each of the required categories of functioning. (R.p. 25).

In finding that Plaintiff had no limitation in the area of concentration, persistence, or pace, the ALJ noted that Plaintiff did not testify as to any problems relative to this area of functioning; that Dr. Robinson reported that Plaintiff's basic cognition with respect to her attention and memory seemed intact in April 2011; and that Dr. Trantham reported that Plaintiff was oriented in all spheres and had adequate attention/concentration and memory in June 2011. (R.p. 25). See Craig v. Chater, 76 F.3d at 590 (4th Cir. 1996)[noting importance of treating physician opinions]; Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessments of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]. Additionally, the ALJ's determination is supported by the opinions of the state agency psychologists, both of whom opined that Plaintiff did not have any severe psychological impairments. (R.pp. 29, 395-408, 450-463). See also Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986) [opinions of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner]; SSR 96-6p [Agency physicians are experts in the evaluation of medical issues for purposes of disability claims].[5]

---

[5]The ALJ's decision does contain an obvious scriveners's error, where the ALJ says that she "concurs with the conclusion of the psychologists . . . that the claimant *does* have a severe mental impairment . . . ." (R.p. 29) [emphasis added]. The ALJ clearly meant to say "does not", not "does", (continued...)



Plaintiff argues that Dr. Robinson's examination was not a psychological one, that Dr. Trantham's opinion was consistent with a finding of slight limitations in work-related functioning which is more than the finding of "none" by the ALJ, and that Plaintiff testified that her medications made her feel tired and groggy and that she could read a magazine for only fifteen minutes before she would fall asleep.  However, it is the ALJ's job to weigh the evidence and resolve conflicts in that evidence.  Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence].  The only issue before this Court is whether there is substantial evidence to support the ALJ's findings, and to the extent Plaintiff is seeking to have this Court re-weigh conflicting evidence, it may not do so.  See Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) ["In reviewing for substantial evidence, we do not undertake to itself reweigh conflicting evidence."]; Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001)[holding that the court is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency]; Hays, 907 F.2d at 1456 [where the ALJ's determination is supported by substantial evidence and free of reversible legal error, the court cannot re-weigh the evidence or substitute its own judgment for that of the Commissioner]; see also Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996) ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"].

Here, the ALJ determined after a review of all of the testimony and evidence that Plaintiff had a mild limitation in her activities of daily living, and no limitation with respect to social

---

[5](...continued)

as both psychologists opined that Plaintiff did *not* have a severe mental impairment.  This typographical error is not a basis for reversal of the decision.  Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999) ["a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case."].



functioning and concentration, persistence or pace. (R.p. 25). There is substantial evidence in the record to support these findings. Plaintiff sought no mental health treatment other than obtaining medication for depression and anxiety (Citalopram and Xanax) from Dr. Trantham, her primary care physician. In a June 2011 telephone interview, Plaintiff stated that she took medication which helped calm her down, that she had not been referred for any psychiatric treatment or counseling, and that although she had worsening of her mental health due to pre-surgery anxiety, her condition improved with medication. (R.p. 220). Although Dr. Trantham stated in January 2011 that Plaintiff's symptoms interfered with her decision-making ability, she opined that Plaintiff was currently coping and able to make good/appropriate decisions, that her attention/concentration and memory were adequate, and that Plaintiff had only a slight work-related limitation in function due to any mental condition. (R.p. 392). In her June 2011 statement, Dr. Trantham again noted that Plaintiff only had a slight work-related limitation due to her depression and anxiety, and that she had adequate concentration/attention and memory. (R.p. 429). Medical providers also routinely observed that Plaintiff was oriented times four, pleasant, and had appropriate mood and affect. (R.p. 327, 332, 347, 442, 446, 448, 478, 516, 521, 526, 535, 540, 546). Dr. Robinson found Plaintiff to be alert and that her basic cognition with regard to attention and memory was intact. (R.p. 415). Dr. Neboschick, while stating that Plaintiff's complaints of difficulty with focus/concentration were credible when she was taking narcotic pain medications, also specifically wrote after these statements that Plaintiff had "[n]o severe limitations second to mental condition." (R.p. 462). Similarly, while the state agency psychologists opined that Plaintiff had mild difficulties in maintaining concentration, persistence, or pace, they both also concluded that Plaintiff had no severe mental impairments. (R.pp. 405, 450, 460).



16

There is no reversible error in the ALJ's findings based on this evidence. Even if the ALJ had found that Plaintiff had a mild restriction in maintaining social functioning and/ or in maintaining concentration, persistence, or pace, such would not dictate a change in the special technique findings, as the regulation provides:

> If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (see § 404.1521).

20 C.F.R. § 404.1520a(d)(1).

Hence, while Plaintiff may not agree with the conclusions reached by the ALJ, her argument that the ALJ failed to properly evaluate her mental impairments is belied by a plain reading of the decision in her case. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)[court scrutinizes the record as a whole to determine whether the conclusions reached are rational]; cf. Foster v. Bowen, 853 F.2d 483, 489 (6th Cir. 1988) [A mental impairment diagnosis is insufficient, standing alone, to establish entitlement to benefits.]; Trenary, 898 F.2d at 1364 [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual functional limitations].

Therefore, this argument is without merit. Hepp v. Astrue, 511 F.3d 798, 806 (8th cir. 2008) [Noting that the substantial evidence standard requires even less that a preponderance of the evidence]; Hays, 907 F.2d at 1456 [If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is 'substantial evidence']; Clarke v. Bowen, 843 F.2d 271, 272-273 (8th Cir. 1988)["The substantial evidence standard presupposes . . . a zone of choice within which the decision makers can go either way without interference by the Courts"]; see also Guthrie v. Astrue, No. 10-858, 2011 WL 7583572, at * 3 (S.D. Ohio Nov. 15, 2011), adopted by, 2012 WL 9991555 (S.D.Ohio Mar. 22, 2012)[Even where substantial evidence may exist to support a contrary



conclusion, "[s]o long as substantial evidence exists to support the Commissioner's decision . . . this Court must affirm."].

## II.

### (RFC/Credibility)

Plaintiff alleges that the ALJ's RFC analysis is not supported by substantial evidence because the ALJ erred in making her credibility determination. Specifically, she claims that the ALJ made an incorrect finding concerning the side effects of her medications. However, the record contains substantial evidence to support the ALJ's credibility determination and findings as to Plaintiff's RFC.

Where appropriate, an ALJ should consider the type, dosage, and side effects of a claimant's medications in reaching his or her decision. See SSR-96-7p [RFC assessment must be based on all of the relevant evidence, including side effects of medication]; see also Hamilton v. Barnhart, 158 F. App'x 68 (9th Cir. 2005)[Where the record contains evidence supporting a Plaintiff's claims regarding side effects, side effects are a factor to be considered in the formulation of an RFC]; Jackson v. Colvin, No. 13-1560, 2014 WL 2154260, at * 1 (W.D.Wa. May 22, 2014)["An ALJ should consider all factors that might have a significant impact on an individual's ability to work, including side effects of medications"]. The ALJ met this standard in her decision, specifically noting Plaintiff's testimony about her medication side effects including that her pain medications made her groggy and tired, but also noting that Plaintiff routinely reported to her pain specialist that she was satisfied with her medication regimen and did not wish to change it, and that Plaintiff's claims concerning the overall limiting effects of her impairments was not credible to the extent inconsistent with the RFC assigned in the decision. (R.pp. 27-28).



The record reflects that Plaintiff reported a side effect of lethargy and hangover on one occasion (R.p. 445), but her medications were adjusted and there is no evidence she had any further such complaints (see R.pp. 447-49, 476-481, 515-41). See Burns v. Barnhard, 312 F.3d 113, 131 (3d Cir. 2002)["Drowsiness often accompanies the taking of medication, and it should not be viewed as disabling unless the record references serious functional limitations."]. PA Gutierrez noted that Plaintiff was satisfied with her medication regimen in August 2011, "was completely satisfied with the current treatment plan due to her financial reasons" in October 2011, and was again satisfied with her medication regimen in May 2012. (R.pp. 516, 520, 540). While Plaintiff complained of constipation in March and May 2011 (R.pp. 441, 445), PA Gutierrez noted that this side effect was controlled by stool softeners and a diet high in fiber in October 2011 (R.p. 521). Plaintiff reported no medication side effects in February 2011, and on two occasions in May 2012 (R.pp. 438, 539, 545). See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints].

Plaintiff also argues in her reply brief that the ALJ "never really addressed" how Plaintiff's persistent pain might have effected Plaintiff's ability to function. However, the ALJ specifically noted in her decision that Plaintiff continued to complain of low back pain after her fusion surgery, but that she received some relief because she routinely described 50 to 60 percent pain relief and rated her pain as 5/10 on a pain scale. (R.p. 28). Contrary to Plaintiff's argument, the ALJ also stated that she considered the combination of Plaintiff's impairments as well as her subjective pain complaints in limiting Plaintiff to a range of sedentary work. (R.p. 29). Plaintiff appears to argue that she would not be able to work based on her reported pain levels, but the ALJ only found



Plaintiff credible to the extent that her pain would reduce her ability to work to the reduced range of sedentary work found, a determination that is supported by substantial evidence in the case record including the medical record and Plaintiff's activities of daily living. See Gross v. Heckler, 785 F.2d at 1166 [pain is not disabling per se]; see also Welch v. Heckler, 808 F.2d 264, 270 (3d Cir.1986)[findings of moderate pain or discomfort were appropriately accounted for in a reduced RFC finding]; Andreolli v. Comm'r of Soc. Sec., 2008 WL 5210682, at *4 (W.D.Pa. Dec. 11, 2008) ["it is well settled that a claimant need not be pain-free or experiencing no discomfort in order to be found not disabled" (citing Welch v. Heckler, 808 F. 2d at 270)]; Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]; SSR 96–7p, 1996 WL 374186, at *1; Craig, 76 F.3d at 595 ["Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment."].

The ALJ specifically noted that Plaintiff's reported activities included performing light household chores (using a Swiffer sweeper and folding laundry), walking in her front yard, watching and following television programs, and socializing with her family and neighbors. (R.pp. 27-28). She also noted that Dr. Robinson found that Plaintiff had no significant limitations with respect to using the restroom, dressing, or preparing simple meals (R.p. 416), and that during the June 2011 telephone interview, Plaintiff admitted she drove herself to appointments (R.p. 220). See Johnson v. Barnhart, 434 F.3d at 658 [Accepting ALJ's finding that claimant's activities were inconsistent



with complaints of incapacitating pain where she engaged in a variety of activities]; Mastro v. Apfel, 270 F.3d at 178 (4th Cir. 2001).

Finally, Plaintiff also makes numerous step five arguments, including that if she could not return to her past relevant work the medical-vocational guidelines (or Grids)[6] would direct a finding of "disabled" because her inability to concentrate and persist would eliminate any transferable skills, pointing out that when she turned 55 years old (shortly after the ALJ's decision), "the question of transferrable skills would become an even closer one." ECF No. 14 at 21. However, although the ALJ made an alternative finding at step five that Plaintiff could perform other jobs with her limitations, she also specifically found that Plaintiff was not disabled at step four because she could return to her past relevant work as a proof operator and a secretary, a finding supported by the testimony of the Vocational Expert at the hearing. Plaintiff has not met her burden of showing that she could not perform her past relevant work; see Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); and "[t]ransferability of skills is an issue only when an individual's impairment(s), though severe, does not meet or equal the criteria in the Listing of Impairments in Appendix 1 of the regulations but does prevent the performance of past relevant work (PRW) and that work has been determined to be skilled or semiskilled." SSR 82–41. Since the decision was made at Step Four that Plaintiff could perform her past relevant work, transferability of skills is irrelevant. SSR 96–8P. Additionally, the "special rules" for persons closely approaching retirement age concern the transferability of skills

---

[6]"The grids are matrices of the 'four factors identified by Congress -- physical ability, age, education, and work experience -- and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy.'" Daniels v. Apfel, 154 F.3d 1129, 1132 (10th Cir. 1998) (quoting Heckler v. Campbell, 461 U.S. 458, 461-462 (1983)). "Through the Grids, the Secretary has taken administrative notice of the number of jobs that exist in the national economy at the various functional levels (i.e., sedentary, light, medium, heavy, and very heavy.)" Daniels, 154 F.3d at 1132.



only in a step five analysis. See 20 C.F.R. §§ 404.1562(b), 404.1568(d)(4); 20 C.F.R. § 404.1560(b)(3)(2010); see also Seat v. Astrue, No. 12–CV–0166–TOR, 2013 WL 328513 (E.D.Wa. Jan. 28, 2013); Spaulding v. Astrue, No. 2:09–cv–00962, 2010 WL 3731859, (S.D.W.Va. Sept. 14, 2010). Since the ALJ found Plaintiff could return to her past relevant work at step four, transferability of skills is not at issue.

In sum, the ALJ did not conduct an improper credibility analysis, nor does her decision otherwise reflect a failure to properly consider the affect Plaintiff's impairments had on her ability to work. Rather, the record and evidence cited by the ALJ provides substantial evidence to support the ALJ's findings as to the extent of Plaintiff's limitations, and the undersigned can therefore find no reversible error in the ALJ's evaluation of Plaintiff's subjective testimony. Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"]; Hays, 907 F.2d at 1456 [If there is evidence to justify refusal to direct a verdict where the case before a jury, then there is 'substantial evidence']. While Plaintiff seeks to have this Court give precedence to her testimony as opposed to the other evidence of record and substitute its own judgment over that of the ALJ, that is not the proper standard for review in a Social Security case. This Court may not overturn a decision that is supported by substantial evidence just because the record may contain conflicting evidence. Smith, 99 F.3d at 638 ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]; see also Guthrie, No. 10-858, 2011 WL 7583572, at * 3, adopted by, 2012 WL 9991555 (S.D.Ohio Mar. 22, 2012)[Even where substantial evidence may exist to support a contrary conclusion, "[s]o long as substantial evidence exists to support the Commissioner's decision . . . this Court must affirm."]; Kellough v. Heckler, 785 F.2d 1147, 1149 (4th Cir. 1986) ["If the Secretary's dispositive factual findings are



22

supported by substantial evidence, they must be affirmed, even in cases where contrary findings of an ALJ might also be so supported."] (citation omitted)].  Therefore, this argument is without merit.

### Conclusion

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion."  <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984).  As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision.  <u>Blalock</u>, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period.  Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

February 5, 2015
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

