IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

BEAUFORT DIVISION

| | |
|---|---|
| Catherine D. Martin, ) | Civil Action No.: 9:14-119-RBH-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Carolyn W. Colvin, Acting ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the Court after the issuance of the Report and Recommendation ("R&R") of United States Magistrate Judge Bristow Marchant.[1]  Plaintiff Catherine D. Martin brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act ("the Act").  In his R&R, the Magistrate Judge recommends affirming the decision of the Commissioner.

**FACTUAL FINDINGS AND PROCEDURAL HISTORY**

Plaintiff applied for disability insurance benefits on September 30, 2010, alleging disability as of December 11, 2009.  The application was denied initially and on reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held July 18, 2012. Plaintiff, represented by a non-attorney representative, appeared and testified at the hearing.  A

---

[1] In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2) (D.S.C.), this matter was referred to the Magistrate Judge.

vocational expert also testified. The ALJ issued a decision dated August 12, 2012, finding that Plaintiff was not disabled. The ALJ's overall findings were as follows:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2015.
>
> 2. The claimant has not engaged in substantial gainful activity since December 11, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: degenerative disc disease with history of lumbar laminectomy, diskectomy and fusion surgeries and carpal tunnel syndrome (20 CFR 404.1520(c)).
>
> . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) requiring the following: lifting/carrying 10 pounds occasionally and frequently; standing/walking two hours of eight; sitting six hours of eight; pushing nine pounds bilaterally and no pulling. The claimant is also limited to occasional climbing stairs/ramps, but no ladders, ropes or scaffolds; occasional stooping, kneeling, crawling and crouching; frequent overhead reaching with the bilateral upper extremities; frequent feeling with the left upper extremity and frequent gross manipulation with the right upper extremity. The claimant has no problems with upper extremity dexterity. The claimant requires use of an assistive device while standing and supporting herself.
>
> . . .
>
> 6. The claimant is capable of performing past relevant work as a secretary (Dictionary of Occupational Titles (DOT)# 201.362-030, described by the vocational expert as sedentary semi-skilled work) and proof operator (DOT# 217.382-010, described by the vocational expert as sedentary semi-skilled work). This work does not require the

>performance of work related activities precluded by claimant's residual functional capacity (20 CFR 404.1565).
>
>. . .
>
>7.  The claimant has not been under a disability, as defined in the Social Security Act, from December 11, 2009, through the date of this decision (20 CFR 404.1520(f)).

Tr. 24–31.

The ALJ's finding became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for further review. On January 15, 2014, Plaintiff filed this action seeking judicial review of the Commissioner's decision. Compl., ECF No. 1. Both Plaintiff and the Commissioner filed briefs, ECF Nos. 14, 15, 16, and the Magistrate Judge issued his Report and Recommendation ("R&R") on February 5, 2015, recommending that the Commissioner's decision be affirmed, R&R, ECF No. 18. Plaintiff filed timely objections to the R&R on February 18, 2015, Pl.'s Objs., ECF No. 19, and the Commissioner replied on March 9, 2015, Def.'s Reply, ECF No. 21.

## STANDARD OF REVIEW

The role of the federal judiciary in the administrative scheme established by the Act is a limited one. The Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citations omitted).

This statutorily mandated standard precludes a *de novo* review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *See Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court "must

3

uphold the factual findings of the [Commissioner] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1973) (holding that the Court must uphold the decision supported by substantial evidence "even should [it] disagree"). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157–58.

Furthermore, a *de novo* review is conducted of the Magistrate Judge's R&R. 28 U.S.C. § 636(b)(1). The R&R is only a recommendation to the Court and has no presumptive weight; indeed, the responsibility to make a final determination remains with the district court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a *de novo* determination of those portions of the R&R to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. § 636(b)(1).

The right to *de novo* review, however, may be waived by the failure to file timely objections. *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The Court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate's proposed findings and recommendations." *Id.* Moreover, in the absence of objections to the R&R, the Court is not required to give any explanation for adopting the recommendation. *Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). In that event, however, the Court must "'satisfy itself that there is no clear error on the face of the record in order to accept the

4

recommendation.'" *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

### DETERMINATION OF DISABILITY

Under the Act, Plaintiff's eligibility for the benefits she is seeking hinges on whether she is under a "disability." 42 U.S.C. § 423(a). The term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." *Id.* § 423(d)(1)(A). "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 991 n.\* (4th Cir. 1985). A claimant may establish a *prima facie* case of disability based solely upon medical evidence by demonstrating that her impairments meet or medically equal the listed impairments set forth in Appendix 1 of Subpart P. 20 C.F.R. § 404.1520(d).

If such a showing is not possible, a claimant may also establish a *prima facie* case of disability by proving that she could not perform her customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975). Because this approach is premised on the claimant's inability to resolve the question solely on medical considerations, it then becomes necessary to consider the medical evidence in conjunction with certain "vocational factors." 20 C.F.R. § 404.1560(b). These factors include the claimant's (1) "residual functional capacity," *id.* § 404.1560; (2) age, *id.* § 404.1563; (3) education, *id.* § 404.1564; (4) work experience, *id.* § 404.1565; and (5) the existence of work "in significant numbers in the national economy" that the individual can perform, *id.* § 404.1560. If the assessment of the claimant's residual functional capacity leads to the conclusion that she can no longer perform her previous work, it must be determined whether the claimant can do some other type of work, taking into account remaining

5

vocational factors. *Id*. The interrelation between these vocational factors is governed by Appendix 2 of Subpart P. Thus, according to the sequence of evaluation suggested by 20 C.F.R. § 404.1520, it must be determined: (1) whether the claimant is currently gainfully employed, (2) whether she suffers from some physical or mental impairment, (3) whether that impairment meets or medically equals the criteria of Appendix 1, (4) whether, if those criteria are not met, the impairment prevents her from returning to her previous work, and (5) whether the impairment prevents her from performing some other available work.

## ANALYSIS

The Magistrate Judge recommends affirming the decision of the Commissioner. Specifically, the Magistrate Judge concludes (1) that the ALJ did not err in finding the Plaintiff's mental impairments were not severe, (2) that substantial evidence supported the ALJ's finding that side effects from the Plaintiff's medication were not severe, (3) that the ALJ appropriately accounted for Plaintiff's pain in assessing her ability to function, and (4) that the ALJ properly assessed the transferability of Plaintiff's job skills, since he found that Plaintiff could return to her previous work, and thus transferability of Plaintiff's job skills, which Plaintiff had argued might be hampered by difficulty concentrating, was not at issue.[2] In her objections, Plaintiff argues that the Magistrate Judge erred in reporting (1) that the ALJ's assessment of the effects of Plaintiff's mental impairments and pain on her functional abilities/activities was without error, and (2) that the ALJ properly evaluated and accounted for Plaintiff's limitations due to pain, medication side effects, and mental impairments in assessing Plaintiff's RFC. Because the Court finds that the ALJ erred in regards to assessing the

---

[2] The Magistrate Judge notes that the ALJ concluded that Plaintiff could return to her past relevant work as a secretary or proof operator, but also made an alternative finding under step five of the disability analysis that Plaintiff could transfer skills to a new line of work. R&R, ECG No. 18, at 21-22; Tr. 29-31. "'Transferability of skills is an issue only when an individual's impairment(s), though severe, does not meet or equal the criteria in the Listing of Impairments in Appendix 1 of the regulations but does prevent the performance of past relevant work (PRW) and that work has been determined to be skilled or semiskilled.'" R&R, ECF No. 18, at 21, *quoting* SSR 82-41. Since the finding here was that Plaintiff could perform her past work, transferability of skills was not at issue. R&R, ECG No. 18, at 21-22.

6

effect of Plaintiff's mental impairments on her RFC, and that error is sufficient for remand, the Court does not reach the merits of Plaintiff's other arguments.

### I. The Effects of Plaintiff's Mental Impairments on Her RFC

Plaintiff argues that the ALJ erred by not accounting for Plaintiff's anxiety and depression in calculating Plaintiff's RFC. Plaintiff further argues that the ALJ did not explore the limitations brought about by Plaintiff's mental impairments with enough specificity to properly assess the effects of said impairments on Plaintiff's RFC.

Under 20 CFR § 404.1520(e) and § 404.1545, the Commissioner must make a residual functional capacity assessment based upon all the medical and other evidence available in the case record. In assessing the severity of mental impairments at step two of the disability evaluation, the Commissioner "measure[s] severity according to the functional limitations imposed by your medically determinable mental impairment(s). We assess functional limitations using the four criteria in paragraph B of the listings: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 CFR § 404, App'x 1 to Part P, ¶12(c); *see also* SSR 96-8p. In assessing RFC based on mental impairments, however, the ALJ must go beyond the severity determination conducted under the step two analysis. "The mental RFC assessment used at steps 4 and 5 of the sequential [disability] evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C [that are used in the severity analysis] . . . ." SSR 96-8p. In conducting this RFC analysis for mental impairments, "[t]he ALJ must express the claimant's capacity in terms of work-related functions, such as the ability to understand, carry out, and remember instructions; use judgment in work-related decisions, respond appropriately to supervision, and deal with changes in a work setting." *Rivera v. Astrue*, 2013 WL 4507081, at \*4 (D. Md. Aug. 22, 2013), *citing* SSR 96-

8p (remanding to the ALJ because the basis for the mental impairment assessment under the RFC was unclear); *see also Hagan v. Colvin*, 2014 WL 4063139, at *4 (D.S.C. Aug. 15, 2014).

In assessing the severity of Plaintiff's anxiety and depression, the ALJ here specifically analyzed the four Paragraph B areas of activities of daily living, social functioning, concentration, persistence, and pace, and episodes of decompensation. Tr. 24-25. Based on the Plaintiff's self-reported difficulties, and a physician's report that she had no significant limitations, the ALJ found Plaintiff had mild difficulties in activities of daily living. Tr. 25. Based on Plaintiff's self-report, a consulting physician's report, and the description of Plaintiff by her treating physician's assistant, the ALJ found no limitation in the area of social functioning. *Id.* Based on Plaintiff's self-report, her treating physician's report, and a consulting physician's report, the ALJ found Plaintiff had no limitation in concentration, persistence, or pace. *Id.* Finally, the ALJ found no episodes of decompensation which had been of extended duration. *Id.* Based on this substantial evidence, and these findings, the ALJ found Plaintiff's mental impairments to be non-severe. *Id.*, at 24-25.

The ALJ found mild difficulties in one of the four areas of Paragraph B in the severity analysis at step 2. The ALJ then mentioned the requirement, under SSR 96-8p to "conduct a more detailed assessment" of functioning under the RFC analysis than under the severity analysis. Tr. 25. The ALJ did not, however, actually conduct such an evaluation of Plaintiff's mental functioning, and how she might be able to function in a workplace with her mental impairments. In making her RFC assessment, the ALJ referenced her earlier findings in regards to the severity of Plaintiff's mental impairments.[3] Tr. 29. Beyond the severity finding, the ALJ noted only that, as per her

---

[3] As noted by the Magistrate Judge in his R&R, the ALJ's finding contains a typo, where the ALJ says that she "'concurs with the conclusion of the psychologists . . . that the claimant *does* have a severe mental impairment . . . .'" R&R, ECF No. 18, 14-15 n.5, *quoting* Tr. 29. Both psychologists referenced had found that Plaintiff did not have severe mental impairments. *Id.*, at 14 n.5. As noted by the Magistrate Judge, such a typo would not constitute a reason to overturn the administrative finding. *Id.*, *citing Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999).

8

earlier assessment, and in accord with the opinions of two state psychologists, Plaintiff's mental impairments were not severe, and that Plaintiff could meet the "physical and mental demands" of her past work as a secretary and proof operator. Tr. 29. The ALJ's analysis of Plaintiff's residual functional capacity due to mental impairments does not meet the level of evaluation required. "What [is] required in [an] RFC analysis [is] a more detailed assessment of [Plaintiff's] mental impairments [than in the severity analysis] to determine what, if any, limitations they place[] on her ability to work . . . ." *Hagan*, 2014 WL 4063139, at *4 (remanding a denial of Social Security disability benefits for lack of substantial evidence because the ALJ did not go beyond the severity analysis in evaluating the effects of Plaintiff's mental impairments on Plaintiff's RFC); *see also Rivera*, 2013 WL 4507081. Because the ALJ's RFC analysis in regards to Plaintiff's mental impairments did not meet the level required, the case must be remanded for further consideration. This more detailed analysis is necessary for the court to conduct a meaningful review of the Commissioner's findings. Because the error in RFC analysis was sufficient for remand, the Court does not review Plaintiff's other allegations of error.

## CONCLUSION

After carefully reviewing the record in this matter, the applicable law, and the positions of the parties, the court respectfully rejects the recommendation of the Magistrate Judge and remands the case to the Commissioner for further findings. For the foregoing reasons, the Commissioner's decision is reversed under Sentence Four of 42 U.S.C. §405(g) and remanded for further proceedings in accordance with this order. Upon remand, the ALJ should consider Plaintiff's other allegations of error.

**IT IS SO ORDERED.**

                                              s/ R. Bryan Harwell
                                              R. Bryan Harwell
                                              United States District Judge

June 23, 2015
Florence, South Carolina